
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 48 | **DATE** | 7/31/2002 |
| **CASE TITLE** | Longview Aluminum, LLC, et al. vs. United Steel Workers of America | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 0 1 2002 | |
| | Notified counsel by telephone. | date docketed | 63 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | 02 JUL 31 PM 8:42 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LONGVIEW ALUMINUM, L.L.C., )
a Delaware limited liability company, )
MICHIGAN AVENUE PARTNERS, )
L.L.C., an Illinois limited liability company, )
)
    Plaintiffs/Counterclaim Defendants, )
) No. 02 C 0048
v. )
) Judge Ruben Castillo
UNITED STEEL WORKERS OF AMERICA, )
)
    Defendant/Counterclaim Plaintiff. )

## MEMORANDUM OPINION AND ORDER

The instant case involving Longview Aluminum, L.L.C. ("Longview"), Michigan Avenue Partners, L.L.C. ("MAP") and the United Steel Workers of America ("USWA") arises out of the curtailment of operations at the Longview Smelter ("Smelter"). Pursuant to a settlement agreement, Longview's claims against USWA and individual defendant David Foster were dismissed. (R. 37, May 29, 2002 Order.) As such, the suit narrowed to include only MAP's claim and USWA's counterclaims arising out of various alleged agreements. Currently before the Court is Counterclaim Plaintiff USWA's motion for partial summary judgment on the basis of two of these alleged agreements. For the reasons set out herein, USWA's motion is denied. (R. 31-1.)

### RELEVANT FACTS

The parties involved in this dispute include USWA, an unincorporated association that represents some of the Smelter's hourly employees, Longview, a Delaware limited liability company and MAP, an Illinois limited liability company. Longview owns the Smelter located in



Longview, Washington. Although USWA alleges that MAP owns both Longview and the Smelter, MAP and Longview claim – based on the declarations of Longview members John Kolleng and Michael Lynch – that MAP has never had an ownership interest in Longview. (R. 31-3, USWA Facts ¶ 1; R. 50, Longview Facts ¶ 1; R. 52, MAP Facts ¶ 1.) Lynch, however, has ownership interests in both MAP and Longview. According to his declaration, he is one of five members of Longview as well as the sole owner of MAP. (R. 50, Longview Facts, Ex. 2, Lynch Dec. ¶¶ 2-3.) While MAP and Longview originally alleged that MAP provides management and consulting services to Longview, Lynch currently claims that MAP is an acquisition company. (R. 27, Am. Compl. ¶ 2; R. 51, Longview Add'l Facts ¶ 2.)

At issue in the instant motion are two documents: (1) the agreement dated December 20, 2000 ("December 20 Agreement"); and (2) the letter of understanding dated February 18, 2001 ("LOU II"). Both documents were signed by USWA and MAP. In the preamble to the December 20 Agreement, the definition of MAP includes not only MAP itself but "any affiliate of Michigan Avenue Partners or any entity with which the principals of Michigan Avenue Partners is or becomes associated with." (R. 31-4, USWA Mot., Ex. 3, Dec. 20 Agreement.) The preamble also states MAP's intention to purchase the Smelter from Alcoa/Reynolds and then resell the electric power available to the Smelter. Section 1 provides that USWA shall support MAP's efforts to sell power. In return, MAP agrees in Section 2 that during any power sale period, the net proceeds of any sale shall be used to pay special supplemental payments ("SSP") and benefits to employees. A power sale period is defined as "any period in which Longview is operating at less than full capacity due, in whole or in part, directly or indirectly, to a Power Sale." (*Id.*) Section 5 is a choice of law and venue provision, applying Illinois law in federal

2

court in the Northern District of Illinois in the case of any disputes. Section 6 provides for modification of the agreement by mutual written consent. The December 20 Agreement was executed by Michael Lynch as Chairman of MAP and George Becker as International President of USWA. Since March 31, 2002, Longview has not provided SSPs to any employees allegedly covered by the December 20 Agreement. The February 21, 2001 Curtailment Agreement between Longview and the Bonneville Power Authority ("BPA") provides for the curtailment of Smelter operations for the period extending from April 1, 2002 through June 30, 2002.

LOU II – the second document at issue in the instant motion – was drafted on MAP letterhead and signed by Michael Lynch as Chairman of MAP. On the final page of the letter, under the word "Confirmed," appears the signature of David Foster, Director of District 11 of USWA. The preamble states that "[a]ll capitalized terms herein have the same meaning ascribed to them in the December 20 Agreement and/or LOU I. As soon as practicable after execution of this LOU II and the closing of the Purchase (the "Closing"), the parties shall re-state the December 20 Agreement, LOU 1 and LOU II into a single document." (R. 31-4, USWA Mot., Ex. 1, LOU II.) The three documents were never restated in a single document. Section 5 of LOU II or the re-start provision states: "effective April 1, 2002, unless the USWA gives its consent to a lower operating rate (such consent not to be unreasonably withheld), Longview Aluminum will take 280 MW on every hour of such BPA power and use all such power to increase smelting operations at Longview, employing the number of bargaining unit employees reasonably associated with operation at that power level." (*Id.*)

USWA alleges that as April 1, 2002 approached, they became aware that the Smelter might not be operating at 280 MW. In fact, Longview did not take 280 MW of BPA power

3

effective April 1, 2002. On March 26 and 27, 2002, Longview laid off all but approximately 15 employees. Since April 1, 2002, Longview has not taken any power from the BPA or any other source. In addition, the collective bargaining agreement in effect at the Smelter expired on May 31, 2002.

Currently before the Court is USWA's motion for partial summary judgment. USWA argues that MAP and Longview breached: (1) the December 20 Agreement by not providing SSPs to the applicable employees during the April 1, 2002 – June 30, 2002 curtailment period; and (2) LOU II by failing to restart the Smelter on April 1, 2002. USWA seeks damages in the amount of the SSP payments required by the December 20 Agreement and an order of specific performance to re-start the Smelter (or damages – including loss of income and benefits – resulting from the failure to restart the Smelter).

## LEGAL STANDARDS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists only when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Id.*

4

## ANALYSIS

USWA seeks summary judgment on two claims predicated on the December 20 Agreement and LOU II. USWA argues that MAP and Longview violated the December 20 Agreement by failing to provide the payments required by the agreement for the period of April 1, 2002 through June 30, 2002. They contend that the period of April 1, 2002 through June 30, 2002 is a power sale period – as defined by the December 20 Agreement – and that MAP and Longview were thus obligated to make payments during that period. USWA further argues that MAP and Longview breached Section 5 of LOU II by not re-starting the Smelter on April 1, 2002. MAP and Longview, on the other hand, contest the enforceability of the December 20 Agreement and LOU II.[1] The companies primarily argue that the execution of a subsequent final agreement was a condition precedent to the enforceability of the December 20 Agreement and LOU II, and that there exist too many questions of material fact to grant summary judgment.

Resolution of the instant dispute involves delving into Illinois contract law.[2] A valid contract exists when the following requirements are met: competent parties, valid subject matter, legal consideration, mutuality of obligation and, especially pertinent to the instant case, mutuality of agreement. *Harris v. Johnson*, 578 N.E.2d 1326, 1329 (Ill. App. Ct. 1991). Even in a case where a future agreement is contemplated by the parties, the Court may nevertheless find a prior

---

[1] MAP incorporated Longview's arguments against summary judgment, except those related solely to Longview's individual circumstances. (R. 53, MAP Resp. at 9-10.)

[2] Both USWA and Longview agree that the Court has jurisdiction over USWA's counterclaim pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 85(a). (R. 31-3, USWA Facts ¶ 4; R. 50, Longview Facts ¶ 4.) As such, the Court should apply federal law, but may also resort to state law if it is compatible with the purpose of § 301. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957). In addition, because the parties apply Illinois law in their briefs, the Court will apply Illinois law in ruling on the instant motion.

agreement binding if the parties intended to be bound by the prior agreement. *Barton Chem. Corp. v. Pennwalt Corp.*, 399 N.E.2d 288, 291-92 (Ill. App. Ct. 1979). *See also Lambert Corp. v. Evans*, 575 F.2d 132, 135 (7th Cir. 1978). Initially, the Court must determine whether an agreement is ambiguous or capable of more than one interpretation. *Quake Constr., Inc., v. American Airlines*, 565 N.E.2d 990, 994 (Ill. 1990). If an agreement contains an integration clause, the Court looks for intrinsic ambiguity or whether the language of the agreement itself evidences any ambiguity. *Air Safety, Inc., v. Teachers Realty Corp.*, 706 N.E.2d 882, 884-85 (Ill. 1999). In cases where there is no explicit integration clause, the Court may look at objective extrinsic evidence to ascertain the parties' intent. *Cincinnati Ins. Co., v. River City Constr. Co.*, 757 N.E.2d 676, 680-81 (Ill. App. Ct. 2001).

The parties do not dispute that the December 20 Agreement meets most of the requirements of a contract, but they vigorously dispute whether there was mutuality of agreement – whether the agreement was meant to be binding, and, if so, whether it was meant to be binding on both MAP and Longview. The instant case is not – as MAP and Longview's caselaw citations suggest – a clear-cut one where there is an explicit disclaimer of an intent to be bound. *Compare Terracom Dev. Group, Inc. v. Coleman Cable and Wire Co.*, 365 N.E.2d 1028, 1031-32 (Ill. App. Ct. 1977) (holding that letter was not binding as it explicitly stated "that no contractual relationship shall exist between the parties unless and until the definitive agreement shall have been executed in writing"); *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1221-22 (7th Cir. 1988) (holding that letter of intent did not constitute a contract where it stated that it was "understood that this is not a binding agreement and the obligations and rights of the parties shall be set forth in the definitive agreement executed by the parties").

On the contrary, the December 20 Agreement, standing alone, appears to provide compelling evidence of an intent to be bound on the part of both MAP and Longview. In the preamble, MAP is defined not only as MAP, the Delaware L.L.C., but as "any entity with which the principals of Michigan Avenue Partners is or becomes associated or affiliated with." (R. 31-4, USWA Mot., Ex. 3 Dec. 20 Agreement.) Lynch is the sole principal of MAP and signed the agreement as MAP's chairman. In addition, he is a member of Longview. Therefore, USWA's claim that Longview should be bound to the December 20 Agreement because of the document's expansive definition of MAP is reasonable. In addition, the December 20 Agreement contains a choice of law and venue provision as well as a severability and survivorship provision - all which evidence an intent to be bound by the agreement.

An intent to be bound by the December 20 Agreement could also be shown by the inclusion of an explicit integration clause in the agreement. The presence of such a clause would prevent this Court from looking at extrinsic evidence of ambiguity. *See Air Safety*, 706 N.E.2d at 884-85. For example, in *Air Safety*, the Illinois Supreme Court held that the following explicit integration clause – "Contract represents the entire and integrated agreement between the parties hereto and supercedes all prior negotiations, representations, or agreements, either written or oral" – prevented the trial court from considering extrinsic evidence of ambiguity. *Id.* at 883-86. The December 20 Agreement does not, however, contain a similar explicit integration clause. Section 6 of the Agreement merely states:

> This Agreement is the entire agreement between the parties relation to the subject matter contained herein. No modification or alteration of the terms contained in this Agreement shall be of any force or effect unless such modification or alteration is by mutual written agreement.

7

(*Id.*) The Illinois Appellate Court recently held that a remarkably similar provision was not an explicit integration clause.[3] *Cincinnati Ins.*, 757 N.E.2d at 681. Instead, the court held that the provision did not express the parties' intent to establish the contract as an integrated agreement, but rather their intent to prevent unilateral modifications of the policy. *Id.* As such, the court held that – in the absence of an explicit integration clause like the one in *Air Safety* – the trial court should have considered extrinsic objective evidence of ambiguity. *Id.* Applying *Air Safety* and *Cincinnati Insurance* to the instant case, the Court finds that in the absence of an explicit integration clause, we should look to extrinsic evidence of ambiguity.

As extrinsic evidence of the ambiguity of the December 20 Agreement, MAP and Longview primarily rely on the sentence in LOU II stating: "As soon as practicable after execution of this LOU II and the closing of the Purchase (the "Closing"), the parties shall re-state the December 20 Agreement, LOU I and LOU II into a single document." (R. 31-4, USWA Mot., Ex. 1, LOU II.) MAP and Longview argue that the statement evidences the parties' intent not to be bound by either the December 20 Agreement or LOU II. Specifically, they argue that the execution of a single document was a condition precedent to the enforcement of their bargain. Considering this extrinsic statement casts enough doubt on the enforceability of the December 20 Agreement to create a material issue of fact and law under the applicable summary judgment standards. In short, MAP and Longview's argument that they did not intend to be bound by the

---

[3] The provision at issue in *Cincinnati Insurance* stated:
This policy contains all the agreements between you and us concerning the insurance afforded. The first named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.
*Cincinnati Ins.*, 757 N.E.2d at 681.

8

December 20 Agreement might be found reasonable by a rational jury. In light of this ambiguity, the Court must deny summary judgment on USWA's counterclaim premised on the December 20 Agreement.

After examining LOU II – the basis for USWA's claim to re-start the Smelter – the Court finds that this document is also ambiguous as to the parties' intent to be bound. The letter contains the same alleged condition precedent which calls into question the enforceability of the December 20 Agreement and which obviously also calls into question the enforceability of LOU II. Furthermore, there is ambiguity as to whether LOU II was intended to be binding on both MAP and Longview. USWA's argument that the definition of MAP from the December 20 Agreement was intended to be incorporated into LOU II is reasonable.[4] Also reasonable, however, is the view that if a party intended to be bound by a document, such an intention would be stated directly. Furthermore, USWA itself has conceded that there are genuine issues of material fact as to Longview's obligations under both the December 20 Agreement and LOU II. (R. 57, USWA Reply at 3.)

Accordingly, the Court must deny USWA's motion for partial summary judgment because MAP and Longview have raised genuine issues of material fact regarding the enforceability of the agreements and the parties bound by the agreements. After viewing all the

---

[4] USWA bases this argument on the following statement in LOU II: "All capitalized terms herein have the same meaning ascribed to them in the December 20 Agreement and/or LOU II." (R. 31-4, USWA Mot., Ex. 1, LOU II.)

facts in the light most favorable to MAP and Longview, as instructed by the law, we believe that summary judgment in favor of USWA – or, for that matter, Longview – would be inappropriate.[5]

## CONCLUSION

The Court sympathizes with the predicament of the Smelter's laid-off employees. Too many genuine issues of material fact exist, however, for the Court to hold MAP and Longview liable pursuant to either the December 20 Agreement or LOU II via summary judgment. We urge all the parties to focus their valuable resources not on further litigation in this Court, but on negotiating a settlement of the issues at hand in this suit and a new collective bargaining agreement. Such an outcome would truly be the optimal one for all the parties involved. For the reasons set forth in this opinion, we deny USWA's partial motion for summary judgment. (R. 31-1.) This Court will set an expedited trial date for this case at the earliest opportunity.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: **July 31, 2002**

---

[5] In its brief, Longview asks the Court to grant summary judgment in favor of Longview and MAP on all claims predicated on LOU II and the December 20 Agreement. (R. 49, Longview Resp. at 6.)

10